**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SAMUEL S. CANN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 07-2416 (GEB) |
| v. | : | |
| | : | |
| GEORGE HAYMAN, et al., | : | |
| | : | **O P I N I O N** |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

> SAMUEL S. CANN, #224001
> Plaintiff <u>Pro</u> <u>Se</u>
> New Jersey State Prison
> Trenton, New Jersey  08625

**Garrett E. Brown, Jr., Chief Judge**

SAMUEL S. CANN, plaintiff in this action (hereinafter "Plaintiff"), currently confined at the New Jersey State Prison, Trenton, New Jersey (hereinafter "Facility"), brought this complaint (hereinafter "Complaint") alleging injuries ensuing from or related to a search procedure conducted on November 8, 2005. <u>See</u> Compl.  Plaintiff submitted his Complaint without prepayment of fees, seeking to proceed in this action <u>in</u> <u>forma</u> <u>pauperis</u>, pursuant to 28 U.S.C. § 1915.

Having thoroughly reviewed the allegations set forth in the Complaint, this Court finds that Plaintiff's constitutional rights

were not violated by the actions defined in the Complaint and, therefore, dismisses the Complaint with prejudice for failure to state a claim upon which relief may be granted, in accordance with 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

**BACKGROUND**

## I.   <u>Factual Allegations</u>

The key events outlined in Plaintiff's Complaint were summarized by the Superior Court of New Jersey, Appellate Division (hereinafter "Appellate Division"), as follows:

> [Plaintiff,] an inmate serving a forty-three-year to life sentence for two counts of murder and related charges at New Jersey State Prison in Trenton, returned from the yard on November 8, 2005, at 10:30 a.m. and, in going through the metal detector, set it off three separate times. [Plaintiff] was taken for a strip search but failed to follow instructions on the removal of his clothing [hereinafter "refusal to submit to a search"]. When ordered to follow the instructions, he complied. Nothing in his clothing explained the triggering of the metal detector. [Plaintiff] was then told to squat and cough in order to cause expulsion of any weapon [or substance, if any,] secreted in his rectum. He did not comply, questioning whether the guards were permitted to give him such an order [hereinafter, "refusal to obey an order to squat and cough"]. The order was repeated, and he again failed to comply. He was then taken to a detention cell where another strip search was performed. Thereafter, he was taken to the BOSS chair, which did not detect any secreted weapon. [Plaintiff] was thereafter subjected to another strip search and taken to the second tier where he was placed in [a certain cell]. Shortly thereafter he was placed in a ["]dry["] cell where he was held until the prison staff was assured that he had not

2

secreted any weapons [or controlled substances].[1]   On November 9, 2005, [Plaintiff] was charged with two disciplinary infractions: [one based on his] refusal to submit to a search, and [another based on his] refus[al] to obey an order [to squat and cough].   A hearing began on November 10, 2005, and was continued to November 14, 16, 21, and 23, 2005, to permit the hearing officer to gather additional evidence.   The hearing concluded on November 28, 2005, and [Plaintiff] was adjudicated guilty of the [second] charge, [i.e., his refusal to obey an order to squat and cough, while the refusal to submit to a search] charge[] was dropped.   The hearing officer imposed a fifteen-day detention and a ninety-day administrative segregation [on the basis of the surviving charge.   Plaintiff] took an immediate administrative appeal and [the] Assistant Superintendent . . . upheld the decision of the hearing officer.

Cann v. Department of Corrections, 2006 WL 2714604 (N.J. Super. App. Div. Sep. 25, 2006), aff'd, 189 N.J. 428 (2007);[2] accord Compl. at 2-7.

Plaintiff's Complaint supplements the aforesaid facts stated in the Appellate Division's opinion by following allegations: (a)

---

[1]      "[A] 'dry cell,' . . . unlike regular cells, contains no sink or toilet." Wolff v. McDonnell, 418 U.S. 539, 552 (1974). Therefore, an inmate placed in a "dry" cell either utilizes and plastic urinal and/or uses prison's public bathroom upon obtaining prison officials' permission to leave the cell to defecate or urinate, or to wash hands before meals, or to take a shower. See Young v. Quinlan, 960 F.2d 351, 364-65 (3d Cir. 1992).

[2]      Prior to filing the instant Complaint, Plaintiff filed a state action based on the same events and alleging the following: (a) the order to squat and cough was issued "only to dehumanize" Plaintiff; (b) Plaintiff's constitutional due process rights were violated by the administrative hearings; and (c) "the sanctions imposed upon [Plaintiff] were highly disproportionate to the . . . alleged violation and clearly intended only to punish [Plaintiff] for violations that were obviously disproved by institutional recording." Cann v. Department of Corrections, 2006 WL 2714604, at *1.

prior to being placed in the "dry" cell, Plaintiff was directed to produce and did produce a urine sample, <u>see</u> Compl. at 5; (b) in Plaintiff's opinion, the metal detector triggered by Plaintiff on November 8, 2005, must have been "flawed," <u>see</u> <u>id.</u> at 6, and (c) in Plaintiff's opinion, the events of November 8, 2005, were an act of retaliation on the part of the prison officials, because

> [o]September 15, 2005, [that is, slightly more than two months prior to the events of November 8, 2005,] Plaintiff submitted an inmate remedy form to the [Facility's] Administration; with a letter attached . . . . . The grievance regarded funds that he believed were inappropriately taken from his inmate account. This grievance accused the officials of indifference and also cited that[] indeed [P]laintiff "should not have to pay for the blunders of an incompetent social department."

Compl. at 2-3.


## II.  <u>Plaintiff's Contentions</u>

Plaintiff asserts that "[t]he order[] to squat and cough [was] on violation of [a certain unspecified state] administrative code for 'visual body and cavity searches [and, therefore, it] violated Plaintiff's . . . equal protection'" rights.  Compl. at 9. Plaintiff further alleges that his placement in a "dry" cell "deprived [P]laintiff of his 8th Amendment rights against [c]ruel and [u]nusual punishment" and, in addition, also violated Plaintiff's equal protection rights.  <u>Id.</u> at 10.  Furthermore, Plaintiff maintains that the order to produce a urinalysis violated Plaintiff's Fourth Amendment rights.  <u>See</u> <u>id.</u>  Next,

Plaintiff alleges that his due process rights were violated by the results of the administrative hearing because, in Plaintiff's opinion, the hearing officer "disregarded the totality of all the factual evidence" by finding Plaintiff guilty of a disciplinary infraction based on Plaintiff's refusal to obey the order to squat and cough.  Id. at 10-11.  Finally, Plaintiff asserts that the holding of an administrative hearing, as well as the fact of the metal detector ringing off, violated Plaintiff's First Amendment rights. Id. at 11.    Plaintiff seeks compensatory and punitive damages, as well as  injunctive relief.  See id. at 11-12.

## STANDARD OF REVIEW

The in forma pauperis statute, as amended by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

5

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Soreman, 534 U.S. 506 511, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  "In addition, under a notice pleading system, it is not appropriate to require a plaintiff to plead [all] facts [necessary for] establishing a prima facie case." Swierkiewicz, 534 U.S. at 511; see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993).  The statement of the claim must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define

6

disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

Moreover, a pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, the plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 340 (2nd ed. 1990)). Thus, a complaint must contain a "statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Plaintiff's allegations, however, fail to state
a claim alleging a "deprivation of any rights, privileges, or
immunities secured by the Constitution and [federal] laws."

## A.    Allegations Based on the Equal Protection Clause

The Equal Protection Clause provides that no state shall "deny
to any person within its jurisdiction the equal protection of the
laws."  U.S. Const. amend. XIV.  This is not a command that all
persons be treated alike, but, rather, a direction that all persons
similarly-situated be treated alike.  See City of Cleburne v.
Cleburne Living Center, 473 U.S. 432, 439  (1985).  "The Equal
Protection Clause commands that no State shall 'deny to any person
within its jurisdiction the equal protection of the laws.'"  Vacco
v. Quill, 521 U.S. 793, 799 (1997).  "The central purpose of the
Equal Protection Clause of the Fourteenth Amendment is the
prevention of official conduct discriminating on the basis of
race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other
suspect classification.  See, e.g., Bakke v. California Bd. of
Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal
protection cannot mean one thing when applied to one individual and
something else when applied to a person of another color" and
"racial and ethnic distinctions of any sort are inherently suspect
and thus call for the most exacting judicial examination").  Thus,
although lawful imprisonment entails the necessary withdrawal or

limitation of many rights and privileges, see Pell v. Procunier, 417 U.S. 817, 822 (1974), inmates have a constitutional right to be free from discrimination based on race and other "suspect classifications," such as alienage or country of origin. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3d Cir. 2004); Bentley v. Beck, 625 F.2d 70, 70-71 (5th Cir. 1980). However, if the challenged provision, either as drafted or as applied, "neither burdens a fundamental right nor targets a suspect class," the court shall uphold the decision reached by the prison officials so long as it appeared to bear a "rational relation to some legitimate end." Romer v. Evans, 517 U.S. 620, 631 (1996).

Here, Plaintiff asserts that the order to squat and cough, as well as placement of Plaintiff in a "dry" cell, violated his equal protection rights.[3] See Compl. at 9, 10. However, his Complain does not allege that he was subjected to either the order to squat and cough or to the placement in a "dry" cell based on his race, alienage or country of origin. See generally, Compl. In other words, the Complaint does not suggest that, for instance, inmates of race or origin other than those of Plaintiff's are spared from

-------

[3]

Plaintiff also asserts that the order to squat and cough was contrary to an unspecified state prison code for visual searches of inmates. See Compl. at 9. However, even if this Court is to presume that Plaintiff's assertion to that effect is correct, violations of state law cannot be repackaged into violations of the U.S. Constitution of federal laws and, therefore, Plaintiff's claims based a violation of state prison code cannot be asserted under Section 1983. See 42 U.S.C. § 1983.

orders to squat and cough in the event if they trigger the metal detector, and their strip search produces no explanation for such a triggering, or that these other inmates are not placed in "dry" cells while awaiting for an administrative hearing based on infraction suggesting concealment of a weapon or controlled substance in bodily cavities.  <u>See</u> <u>generally</u>, Compl.  Therefore, the decision of the prison officials to order Plaintiff to squat and cough or to place him in a "dry" cell should be examined under the "rational relation to some legitimate end" test articulated in <u>Romer</u>, 517 U.S. at 631.

Addressing a similar issue during Plaintiff's state actions, the Appellate Division noted that,

> [c]ertainly, the [prison officials] were entirely justified in giving . . . an order [to squat and cough] when the strip search failed to produce the object that triggered the metal detector; not only for their safety, but also that of other inmates.  The command to squat and cough was certainly less invasive than a digital or instrumented inspection of [Plaintiff's] rectum. Furthermore, the [prison officials] had little choice but to put [Plaintiff] in a dry cell because of the risk to the guards and other inmates from a [potentially] secreted weapon.

<u>Cann v. Department of Corrections</u>, 2006 WL 2714604, at *2.

This Court agrees.  It appears that the decision to order Plaintiff to squat and cough, as well as that to place him in a "dry" cell, bore a rational relation to the legitimate goal of ensuring the safety of prison officials and inmates, by keeping the Facility drug- and weapon-free.  Therefore, the Court finds that

Plaintiff's equal protection rights were not violated either by the order to squat and cough, or Plaintiff's placement in a "dry" cell, and dismisses these claims accordingly.  See Romer, 517 U.S. at 631; see also Johannes v. Alameda County Sheriff's Dep't, 2006 U.S. Dist. LEXIS 63378 (N.D. Cal. Aug. 28, 2006) (concluding that an order to an inmate to squat three times, coughing each time, did not violate the inmate's constitutional rights).


**B.   Allegations Based on the Eighth Amendment**

Plaintiff also alleges that his placement in a "dry" cell amounted to cruel and unusual punishment.  See Compl. at 10. Liberally construing Plaintiff's allegation, the Court interprets Plaintiff's statement as a conditions of confinement claim under the Eighth Amendment.

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eight Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane

11

conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225; Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  See Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

To establish that the conditions amount to cruel and unusual punishment under the Eighth Amendment, an inmate must allege both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

12

The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303.  In sum, an inmate may satisfy: (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff alleges that he was subjected to a short-term "dry cell" confinement while he was awaiting for his administrative hearing.  See Compl. at 6.  However, Plaintiff states no allegation suggesting that: (1) he was deprived of the minimal civilized measure of life's necessities; or (2) he faced a substantial risk of harm to his health or safety, and the prison officials were aware of this risk but deliberately ignored it.  See generally, Compl.  Specifically, the Complaint neither indicates that Plaintiff was denied a plastic urinal (or prohibited from sufficient use of the Facility's public bathrooms), nor suggests

that Plaintiff's placement in a "dry" cell posed a substantial risk of harm to Plaintiff's health or safety were at risk because of his placement in the "dry" cell, while the prison officials deliberately ignored the risk, while being aware of it.  See Young v. Quinlan, 960 F.2d 351, 364-65 (3d Cir. 1992).

In sum, Plaintiff's Complaint states nothing more than the mere fact of Plaintiff's displeasure with being temporarily placed in the "dry" cell.  Such allegations, however, cannot amount to a cognizable constitutional claim, and will be dismissed.  Compare Young, 960 F.2d at 364-65 (finding a potential constitutional violation where the inmate alleged that he suffered from a prolonged case of diarrhea while being placed in a "dry" cell (which was a health hazzard, being covered with feces), was deprived of a plastic urinal by the prison officials aware of the inmate's diarrhea problem, and permitted by these officials to defecate only once and urinate only twice during a 96-hour period).

## C.   Allegations Based on the Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)

(quoting <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." <u>Id.</u> at 619 (quotation marks and internal citation omitted).

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search was unreasonable because the prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, or person invaded for such a purpose.  <u>Id.</u> at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy."  <u>Id.</u> at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. . . . [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. . . . [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

<u>Id.</u> at 527-28 (footnotes, citations and internal quotation marks omitted).

Thus, when a prison regulation impinges on inmates' constitutional rights, that regulation is valid if it is reasonably related to legitimate penological interests such as institutional security.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 361-62 (1996);

15

Washington v. Harper, 494 U.S. 210, 223-24 (1990) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Since drugs constitute a serious threat to institutional security, prisons have a legitimate interest in detecting, deterring, and eradicating drug use.  See Hudson, 468 U.S. at 526-27; Storms v Coughlin, 600 F. Supp. 1214, 1220-24 (S.D.N.Y. 1984).  Consequently, courts have upheld random urinalysis, as well as those based on circumstances unique to a particular search, so long as these circumstances indicated the presence of legitimate suspicions that the inmate might have had an exposure to controlled substances.  See e.g., Lucero v. Gunter, 17 F.3d 1347, 1350 (10th Cir. 1994) (collecting cases).

In the case at bar, Plaintiff was subjected to a non-intrusive urinalysis based on a legitimate suspicion.  While Plaintiff appear to assert that his triggering of the metal detector should not have triggered any toxicology-related suspicions, it appears that the prison officials operated on such a suspicion.  Since it was not unreasonable for the Facility officials to suspect that: (1) such controlled substance might have been placed in a casing containing metallic elements, which was concealed within Plaintiff's body and triggered the metal detector; and (2) such controlled substance could have been oozing into Plaintiff's body and, being absorbed into his system, could be detected through a urinalysis,[4] this

---

[4]
    The Court notes, in passing, that Plaintiff's immediately following placement in a "dry" cell appears to be well in line with

Court concludes that an order to Plaintiff to provide a urinary sample did not violate Plaintiff's Fourth Amendment rights, as defined in Hudson, 468 U.S. at 527-28.  Consequently, Plaintiff's Fourth Amendment claim will be dismissed.


**D.   Allegations of Denial of Due Process**

Next, Plaintiff alleges that his due process rights were violated by the results of the administrative hearing because, in Plaintiff's opinion, the hearing officer "disregarded the totality of . . . evidence" by finding Plaintiff guilty of a disciplinary infraction based on Plaintiff's refusal to obey the order to squat and cough.  Compl. at 10-11.

To support this denial of procedural due process claim, Plaintiff must demonstrate that the procedures afforded him fell short of the requirements enunciated in Wolff v. McDonnell, 418 U.S. 539.  See Sandin v. Conner, 515 U.S. 472, 487 (1995).

In Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  See Wolff v. McDonnell, 418 U.S. at 556-57; Young v.

such suspicion, since the conditions of a "dry" cell prevent an inmate from disposing of controlled substances by secretly flashing it into a toilet or a sink (contained in a regular cell).

<u>Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).  Furthermore, in <u>Wolff</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to: (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."[5] <u>Wolff</u>, 418 U.S. at 563-71.

Finally, The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985); <u>see also</u> <u>Young</u>, 926 F.2d at 1402-03.  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must often
> act swiftly on the basis of evidence that might be
> insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process Clause
> does not require courts to set aside decisions of prison
> administrators that have *some basis in fact*.  Revocation
> of good time credits is not comparable to a criminal

---

[5]

However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  <u>Id.</u> at 567-68; <u>see also</u> <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321-22 (1976); <u>Young</u>, 926 F.2d at 1404.

conviction, and neither the amount of evidence necessary to support such a conviction, *nor any other standard greater than some evidence applies in this context.*

Hill, 472 U.S. at 456 (internal citations omitted, emphasis supplied).   Moreover, the Court stated that "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.   Instead, due process in this context requires only that *there be some evidence to support the findings made in the disciplinary hearing*." Id. at 457 (emphasis supplied).

Here, Plaintiff does not allege that he was denied a written notice of the charges or a written statement by the fact finder as to the evidence relied on in the fact finder's decision, or an opportunity to call witnesses and present documentary evidence in his defense.   See generally, Compl.; accord Cann v. Department of Corrections, 2006 WL 2714604, at *2.   He merely alleges that, to Plaintiff's disappointment, the hearing officer paid more attention to inculpatory evidence and allocated less importance to exculpatory evidence that Plaintiff preferred to concentrate upon. See Compl. at 10-11.   In view of this sole allegation, Plaintiff concludes that the hearing received by him was not impartial and, thus, that his due process rights were violated.   See Compl. at 11; compare Cann v. Department of Corrections, 2006 WL 2714604, at *2 (finding that Plaintiff was availed to a hearing before an impartial hearing officer).

19

However, Plaintiff's opinion as to what conclusion would be "more" proper under the "totality of evidence" test that Plaintiff asserts, has no bearing on Plaintiff's due process rights.  See Thrower v. N.J. Dep't of Corr., 2007 U.S. Dist. LEXIS 66252 (D.N.J. Sept. 6, 2007) ("[S]uch allegations fail to state a cognizable due process claim since Plaintiff's argument is, effectively, limited to Plaintiff's disagreement with the outcome of the hearing") (citing Coades v. Kane, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992)).  Rather, the very fact that Plaintiff, by his own admission, did refuse to obey the order to squat and cough, see Compl. at 3-5, indicates that Plaintiff's administrative adjudication was based on some evidence supporting the findings made by the hearing officer.  See Hill, 472 U.S. at 457. Therefore, Plaintiff's due process rights were not violated by the findings reached as a result of Plaintiff's administrative proceedings.  Consequently, his claim based on the Fourteenth Amendment will be dismissed for failure to state a claim upon which relief may be granted.

**E.   Allegations Based on the First Amendment**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, a civil rights plaintiff

must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001) (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)); <u>see also</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 160, 37 V.I. 496 (3d Cir. 1997) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)).

Here, Plaintiff alleges that the adjudication of Plaintiff guilty of a disciplinary infraction based on his refusal to obey the order to squat and cough, as well as the fact of metal detector ringing, were retaliatory "adverse actions"[6] because

---

[6]

Plaintiff's Complaint does not clarify how the fact of the metal detector ringing qualifies as an "adverse action" by prison *officials* (rather than by prison's equipment, which cannot be a "defendant" in a civil suit).

Moreover, Plaintiff's allegation specify Plaintiff's belief that the "bias" of prison officials conducting his administrative hearing--rather than the very fact of an administrative hearing-- was the retaliatory act. However, such allegations are not a fact but Plaintiff's self-serving conclusion that he should have been acquitted of the disciplinary charges. In other words, this line of argument does not state a First Amendment claim but rather paraphrases Plaintiff's Fourteenth Amendment claim discussed above. Since the Court has concluded that this due process line of arguments is meritless, the Court, in order to duly address Plaintiff's First Amendment claim, liberally construes Plaintiff's allegations as a statement that a person of reasonable firmness could be deterred from filing another grievance of the type that Plaintiff filed by the treat of an administrative hearing.

> [o]September 15, 2005, [that is, slightly more than two
> months prior to the events of November 8, 2005,]
> Plaintiff submitted an inmate remedy form to the
> [Facility's] Administration; with a letter attached . .
> . .  The grievance regarded funds that he believed were
> inappropriately taken from his inmate account.  This
> grievance accused the officials of indifference and also
> cited that[] indeed  [P]laintiff "should not have to pay
> for the blunders of an incompetent social department."

Compl. at 2-3, 11.

It appears unquestionable that Plaintiff's filing of his grievance was a protected First Amendment activity, and the Court presumes that an inmate of ordinary firmness might consider an administrative hearing a sufficient deterrence.[7]

However, in Plaintiff's case, his filing of a grievance does not appear to be a substantial or motivating factor in the prison official's decision to conduct Plaintiff's administrative hearing. Even if this Court is to hypothesize that the phrase "[Plaintiff] should not have to pay for the blunders of an incompetent social department" was, somehow, deemed by the Facility officials so offensive to prompted them into seeking a chance to retaliate against Plaintiff, the chain of events that evolved from the triggering of the metal detector on November 8, 2005, does not appear to be related in any way to Plaintiff's protected activity,

---

[7]     It is unclear whether the adverse actions in the form of a
disciplinary hearing could be sufficient to deter a person of
ordinary firmness from exercising his constitutional rights.  The
Court, however, presumes that, generally, the possibility of an
administrative hearing could defer an inmate of reasonable firmness
(who filed grievances in the past) from filing future grievances.

since: (1) from September 15 (the date of filing of Plaintiff's grievance) to November 8 (the date of the squat and cough order), Plaintiff returned into the Facility from the prison yard at least fifty-two times without any incidents;[8] and (2) the chain of events started on November 8, 2005, was an exclusive result of *Plaintiff's own* triple triggering of the metal detector, coupled with *Plaintiff's own* refusal to obey the order to squat and cough, both of which the Facility officials could not have either predicted or arranged for as an "adverse action."[9]   The mere fact that Plaintiff's action resulted in a disciplinary adjudication unfavored by Plaintiff does not qualify as a fact connecting Plaintiff's September filing of a grievance with his November administrative hearing.   Because the facts stated in Plaintiff's Complaint indicate that the chain of events started on November 8, 2005, is not so related to Plaintiff's filing of a grievance as to render the latter a substantial or motivating factor for the

---

[8]

The assumption is based on Plaintiff's one visit to the prison yard per day.  Clearly, if Plaintiff visited the prison yard more than once a day, such visits provided the Facility officials with additional opportunities to "retaliate" against Plaintiff. However, Plaintiff's Complaint indicates that Plaintiff encountered no friction with the Facility officials until November 8, 2005, that is, almost for two months after filing his grievance.

[9]

Notably, Plaintiff does not allege that the metal detector was tampered with by the prison officials in order to make it ring off at the time when Plaintiff was passing (and then twice re-passing) through the detector on November 8.  Rather, Plaintiff merely alleges that the metal detector became mechanically "flawed."  See Compl. at 6.

former, Plaintiff failed to state a cognizable First Amendment claim.  Therefore, Plaintiff's allegations to that effect will be dismissed.

## CONCLUSION

Based on the foregoing, this Court grants Plaintiff's application to file the Complaint without prepayment of the filing fee and dismisses Plaintiff's Complaint with prejudice for failure to state a claim upon which relief may be granted.

An appropriate Order accompanies this Opinion.

s/Garrett E. Brown, Jr.
**GARRETT E. BROWN, JR.**
**Chief Judge**
**United States District Court**

Dated: June 2, 2008